**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HOWARD DEAN BEERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 12-cv-8888 |
| | ) | |
| E.R. WAGNER MANUFACTURING CO., | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this lawsuit, Plaintiff Howard Dean Beers alleges that Defendant E.R. Wagner Manufacturing Company violated the Illinois common law tort of retaliatory discharge by terminating his employment because he complained to management that its plan, to secretly substitute inferior product for the products it had promised its customers, would be fraudulent. He also alleges that E.R. violated the Illinois Whistleblower Act by terminating Beer's employment when he resisted the plan to substitute products. The Court has jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332. Before the Court is Defendant's motion to dismiss [7] Plaintiff's complaint for failure to state a claim upon which relief can be granted. For the reasons stated below, the Court denies Defendant's motion to dismiss [7].

**I.   Background**[1]

Plaintiff Howard Dean Beers, who began working for E.R. Wagner Manufacturing Company in 1989, was the company's purchasing manager. On March 13, 2012, his supervisor, Frank Stangel, issued an e-mail to selected managers, including Beers, which stated that company executives had agreed to begin selling industrial customers its No. 301 stainless steel in

---

[1] For purposes of Defendant's motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, *e.g., Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

place of its No. 304 grade, which has two percent more nickel than the 301 grade. In making the switch, the company would save approximately $625,000 every year. On March 14, 2012, Jerry Boll, Wagner's chief executive officer, directed the executives by e-mail to begin selling No. 301 grade steel in place of No. 304 as quickly as possible, adding "I would NOT alert all your customers so they tell you not to do it, or put their hands out looking for all the savings. But we are doing this and we are doing it now." Boll added that only a metallurgist could tell the difference between the two grades.

Also on March 14, 2012, Stangel advised Beers that he had placed Beers on a performance improvement plan. Stangel advised Beers that the plan required Stangel to revisit Beers' progress on May 7, 2012. On March 15, 2012, Beers sent an e-mail to Wagner's executive team, stating that he disagreed with the course of action: "T301 is inferior to T304 especially on corrosion resistence. We can't change this material without customer approval. What if they asked for certification, what would we send them? This looks deceitful and boarders [sic] on illegal. This could open up Stocker and E.R. Wagner to costly legal issues and cause us to lose our ISO standing." Beers sent another e-mail on March 19, 2012, explaining the difference in composition between the two grades of stainless steel and how the 301 grade would be more corrosive than 304.

On March 28, 2012, Stangel gave Beers a memorandum, stating that the company was eliminating his position and terminating his employment, effective May 4, 2012.

## II.     Legal Standard on a Rule 12(b)(6) Motion

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first

must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1965, 1973 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

The federal notice pleading regime applies in federal courts, even when the parties are litigating a state cause of action. Illinois is a fact-pleading jurisdiction, which means that "a plaintiff must allege facts * * * to establish his or her claim as a *viable* cause of action." *Napleton v. Village of Hinsdale*, 891 N.E.2d 839, 845 (Ill. 2008) (emphasis added). Accordingly, a plaintiff in Illinois state court must state her allegations with "specificity," by "factually setting forth the elements necessary to state a cause of action." *People ex. rel Scott v. Coll. Hills Corp.*, 435 N.E.2d 463, 467 (Ill. 1982). Not so in federal court: "Rule 8(a)'s notice pleading standard applies to * * * state law claims that are litigated in federal court" (*Christensen v. County of Boone, Illinois*, 483 F.3d 454,459 (7th Cir. 2007)), because the Federal Rules of Civil Procedure apply to cases filed in federal court. See *Hanna v. Plumer*, 380 U.S. 460, 473 (1965) ("*Erie* and its offspring cast no doubt on the long-recognized power of Congress to

prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules.").

## III. Analysis

### A. Retaliatory Discharge

In Illinois, the default rule is that an employee serves at the will of her employer, who may discharge her "for any reason, or no reason" at all. *Zimmerman v. Buchheit of Sparta, Inc*., 645 N.E.2d 877 (Ill. 1994); *Fellhauer v. City of Geneva*, 568 N.E.2d 870 (Ill. 1991). The common-law tort of retaliatory discharge is a "limited and narrow" exception to employment at-will. *Turner v. Mem'l Med. Ctr*, 911 N.E.2d 369, 374 (Ill. 2009); *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 356-57 (Ill. 1978) (first recognizing the tort of retaliatory discharge); see also *Callahan v. Edgewater Care & Rehabilitation*, 872 N.E.2d 551, 552 (Ill. App. Ct. 2007) (tracing the development of the tort). To prove retaliatory discharge, an employee must show that (1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) that the discharge violates a clear mandate of public policy. *Turner*, 911 N.E.2d at 374; *Fellhauer*, 568 N.E.2d at 875; *Barr v. Kelso-Burnett Co*., 478 N.E.2d 1354, 1356 (Ill. 1985); *Palmateer v. Int'l Harvester Co*., 421 N.E.2d 876, 879-80 (Ill. 1981). In stating an exception to the general rule of at-will employment, the tort of retaliatory discharge "seeks to achieve 'a proper balance * * * among the employer's interest in operating a business efficiently and profitably, the employee's interest in earning a livelihood, and society's interest in seeing its public policies carried out.'" *Fellhauer*, 568 N.E.2d at 876 (quoting *Palmateer*, 421 N.E.2d at 878).

Although what counts as a clearly mandated public policy is not precisely defined (see, *e.g., Palmateer v. Int'l Harvester Co., 421 N.E.2d 876, 878-79 (1981); Carty v. Suter Co., Inc.,* 863 N.E.2d 771, 774 (2007)), the tort has been construed in Illinois to include discharges in

4

retaliation for certain activities, such as in the context of workers compensation claims and whistleblowing (see *Benders v. Bellows and Bellows*, 515 F.3d 757, 766 (7th Cir. 2008)), reporting an employer's criminal violations (see *Palmateer,* 421 N.E.2d at 880), or reporting violations of health and safety standards (see *Wheeler v. Caterpillar Tractor Co.,* 485 N.E.2d 372, 377 (1985)). In his complaint, Beers identifies four statutes that he believes were violated by E.R. Wagner's scheme—the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et seq.; the Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, et seq., the Lanham Act, 15 U.S.C. § 1125; and the theft by deception provision of the Illinois Criminal Code, 720 ILCS 5/16-1(a)(2)—and alleges that he was discharged from employment in retaliation for raising concerns about violations of these statutes.[2]

The Illinois Criminal Code states that a person commits theft when he or she knowingly obtains, by deception, control over the property of the owner. 720 ILCS 5/16-1(a)(2). Beers' allegation that E.R. Wagner's conduct constituted the crime of theft by deception alone supports his cause of action for retaliatory discharge, even if E.R. Wagner's conduct does not ultimately violate the statute. See *Foley v. CAS Partners, LLC*, 2010 WL 960342, at *2 (N.D. Ill. Mar. 15, 2010); see also *Stebbings v. University of Chicago*, 726 N.E.2d 1136, 1144 (Ill. App. Ct. 1st Dist. 2000) (noting that plaintiff need not plead facts that conclusively show such a violation, only that a reasonable person could interpret the law as covering the conduct in question). In *Foley*, the plaintiff was a leasing manager who complained to her supervisor that her employer was intentionally overstating the size of the apartments that they were leasing. She was written up and eventually fired. In finding that her complaint stated a cause of action for common law

---

[2] Beers does not allege that he reported illegal conduct to a governmental entity, but rather alleges that he was fired for complaining to E.R. Wagner's CEO Jerry Bolls about E.R. Wagner's suggestion that it switch grades of stainless steel without notifying customers.

retaliatory discharge, the Court held that her allegation that "defendants knowingly overcharged tenants for utilities by charging pro rate payments based on overstated apartment square footage suggests the crime of theft by deception." *Id.* at *2.

There is no legitimate question that the theft-by-deception statute, and likely some of the others cited by Beers, represents clearly defined Illinois public policy. Here, Beers alleges that E.R. Wagner was attempting to deceive its customers by providing inferior product and profiting substantially from that deception. See, *e.g.*, *Palmateer*, 421 N.E.2d at 879-880 ("There is no public policy more important or more fundamental than the one favoring the effective protection of the lives and property of citizens."). Beers further alleges that when he spoke out against the seemingly deceptive practice (which implicates issues such as consumer fraud, unfair or deceptive trade practices, and misrepresentation or concealment in order to induce reliance), in favor of the customers' rights, he was fired. Public policy concerns clearly are implicated, whether or not E.R. Wagner's conduct actually violated the statutes. Plaintiff has stated a claim for retaliatory discharge.

### B. Illinois Whistleblower Act

Plaintiff also claims that his termination violated the Illinois Whistleblower Act and related Illinois public policy because it was carried out in retaliation for his refusal participate in Boll's plan to ship inferior stainless steel to E.R. Wagner's customers without disclosing the switch. The Whistleblower Act provides that "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a state or federal law, rule or regulation." 740 ILCS 174/20. "[I]n order to sustain a cause of action under the Act, a plaintiff must establish that (1) he refused to participate in an activity that would result in a violation of a state or federal law, rule, or regulation and (2) his employer retaliated against

him because of that refusal." *Sardiga v. Northern Trust Co.,* 948 N.E.2d 652, 656–57 (Ill. App. Ct. 1st Dist. 2011).

Beers alleges throughout his complaint that he was fired because he "refused" to participate in Boll's scheme. He details e-mails that he sent stating that the scheme "looks deceitful and borders on illegal" and explaining the corrosive properties of the different products. He also identified two of E.R. Wagner's existing customers to whom the substitution would have to be disclosed, stating, "We would need to have them sign off on this big a change." Beers has sufficiently alleged both that he refused to participate in activity that would result in a violation of law and that his employer fired him because of his refusal. Thus, he has stated a claim that his termination violated the Illinois Whistleblower Act.

**IV. Conclusion**

For these reasons, the Court denies Defendant's motion to dismiss [7].

Dated: April 17, 2013

_____
Robert M. Dow, Jr.
United States District Judge